IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-03052-CMA-MJW

JACOB DANIEL OAKLEY,

Plaintiff(s),

v.

ARISTREDEZ ZAVARAS, executive director, and
SUSAN JONES, Warden CCF/CSP,

Defendant(s).

---

**RECOMMENDATION ON**
**(1) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
**FED. R. CIV. P. 65 (Docket No. 21),**
**(2) DEFENDANTS' MOTION TO DISMISS (Docket No. 24), and**
**(3) PLAINTIFF'S MOTION TO CHALLENGE THE CONSTITUTIONALITY OF THE**
**P.L.R.A.'S EXAUSTION [sic] RULE 7 CERTIFICATE OF INTERVENTION OF U.S.**
**(Docket No. 41)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case was referred to this court pursuant to an Order Referring Case issued

by Judge Christine M. Arguello on January 27, 2011.  (Docket No. 9).

I.  PLAINTIFF'S ALLEGATIONS

The pro se incarcerated plaintiff, Jacob Daniel Oakley, alleges the following in his

repetitive, rambling Prisoner Complaint, which is brought pursuant to 42 U.S.C. § 1983.

In Claim One, plaintiff claims he has been without outdoor recreation for a period of

seven to eight years while in solitary confinement in administrative segregation ("ad

seg") in violation of the First, Eighth, and Fourteenth Amendments.  His 23-hour lock

down has made him "go violently insane, causing disruptive behaviors, and indured [sic] hopelessnes [sic] which allso [sic] led to suicidal, and self harming behaviors." " (Docket No. 1 at 4).  He seems to allege he does get indoor exercise, but claims "another cell-boxed area with an open window is not outside."  (Docket No. 1 at 8).

Another ad seg inmate, Reub, filed another action in this court alleging denial of outdoor recreation to ad seg inmates, and Reub received an injunction to receive outdoor recreation.  Defendant Warden Susan Jones is aware of the validity of outside recreation because she is a defendant in that other action.  Plaintiff sent a letter to Jones, advising her of plaintiff's knowledge of a suit on the same issues filed against her and cited case law in support of plaintiff's claims.  Jones sent plaintiff's letter to an official with no authority to grant relief, and plaintiff's request for relief was denied.  Plaintiff completed his grievance exhaustion and also sent another letter to Jones, asking that she respond personally, but she has refused to fulfill her legal duties.  Plaintiff has been denied equal protection and treatment because Jones granted relief to Rueb but denied relief to plaintiff.

In Claim Two, plaintiff complains of a "denial of full-fledged exersize" [sic] in violation of the First, Eighth, and Fourteenth Amendments.  Plaintiff asked Jones for "full fledged exersize [sic] equipment (i.e., machine weights) to be installed into our dayhalls to provide proper exersize [sic] to those living in solitary confinement for long-indefinite periods of time."  (Docket No. 1 at 11).  Such "full fledged" exercise "would efficiently and efectively [sic] vent out frustrations and tentions [sic] daily confinement is known to bring - and with that to not provide physical activity, to those of extreme inactivity and daily isolation and confinement would bring about unecessary [sic] infliction of pain and

suffering in which theres [sic] no escape!"  (Docket No. 1 at 11).  Plaintiff has become

"violantly [sic] insane," disruptive, suicidal, and has had self-harming psychotic outbursts

because he has had no way to vent out daily frustrations through proper exercise.

Plaintiff made Jones aware of this.  In addition, the lack of physical exercise has caused

plaintiff physical deterioration including deterioration to his bones, muscles, and joints,

plus insomnia.  Lack of physical exercise to a prisoner in closed management

constitutes a protected liberty interest.

Plaintiff sues "Jones in her official capacity for declaratory, prospective,

equitable, injunctive relief for: A transfer to a facility where true outdoor recreation is

possible; nominal and punitive damages in her individual capacity, to show existence of

a constitutional right and to deter willfull [sic] conduct to violate rights of outdoor

recreation; compansatory [sic] damages of physical injury suffered because of my

extreme mental and emotional distress to denial outdoor recreation."  (Docket No. 1 at

15).

Defendant Zavaras, Executive Director of the Colorado Department of

Corrections ("CDOC"), is in control of the entire CDOC, has say over inmates'

recreational activities, helped design the rules and regulations regarding recreation and

exercise, enforced those rules and regulations, and created "CSP II" which is physically

inadequate.  Plaintiff sues him for "declaratory, prospective, equitable, injuctive [sic]

relief."  "Moste [sic] of the relief sought will have to be brought through him for

sustematic [sic] changes on outdoor recreation and exersize [sic].  Because of this i [sic]

only sue for injunctive relief et al., related claims 'rather then [sic] damages, i'll [sic] let

damages to be determined during trial."  (Docket No. 1 at 16).

4

In his Request for Relief section of the Prisoner Complaint, plaintiff seeks declaratory, injunctive, and monetary relief.  (Docket No. 1 at 20).

## II.  PENDING MOTIONS

Now before the court for a report and recommendation are the following three motions: (1) Plaintiff's Motion for Preliminary Injunctive Relief Fed. R. Civ. P. 65 (Docket No. 21), (2) Defendants' Motion to Dismiss (Docket No. 24), and (3) Plaintiff's Motion to Challenge the Constitutionality of the P.L.R.A.'s Exaustion [Sic] Rule 7 Certificate of Intervention of U.S. (Docket No. 41).   Responses were filed to the first two motions (Docket Nos. 34 and 36).  No response to the third motion was filed by the defendants. The court has very carefully considered all of these motions papers as well as applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court's file.  The court now being fully informed, makes the following findings, conclusions of law, and recommendations.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

5

## A.  Plaintiff's Motion for a Preliminary Injunction

Plaintiff seeks a preliminary injunction "for a transfer to a place where 'outdoor recreation and . . . full-fledged exercise is possible." (Docket No. 21).  More specifically, he seeks a transfer to the Colorado Mental Health Institution in Pueblo ("the old state hospital" - not the "new one") (including being allowed to eat in the chow hall with the inmates for all meals) or alternatively to the San Carlos Correctional Facility (on the first floor with outside recreation in the yard, not the boxed in day hall) for outdoor exercise and access to machine weights so he can "vent out frustrations built up, because of add-seg effects on me." (Docket No. 21 at 21).  He requests "access to the gym 3 hours 6 days a week. Since i am the only one that they would be making the exception to there would be no exscuse [sic] why they couldn't give me more time." (Docket No. 21 at 22).

In order to obtain a preliminary injunction, plaintiff must demonstrate the following: (1) a substantial likelihood of success on the merits of the case, (2) irreparable injury to the plaintiff if the preliminary injunction is denied, (3) the threatened injury to the plaintiff outweighs the injury to the other party under the preliminary injunction, and (4) the injunction is not adverse to the public interest.  Salt Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003).  In addition, the right to relief must be "clear and unequivocal" because "a preliminary injunction is an extraordinary remedy."  Id.

Furthermore, in cases such as this, where the relief requested in a preliminary injunction would (1) disturb the status quo, (2) be mandatory as opposed to prohibitory, or (3) provide the plaintiff with substantially all the relief he may recover after a full trial

on the merits, an even heavier burden is placed upon the plaintiff, and he must show that the four factors listed above weigh "heavily and compellingly in his favor." Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001). "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003).

Defendants assert that the plaintiff has failed to demonstrate the elements required for entry of a preliminary injunction.  This court disagrees.  As discussed more thoroughly below with respect to the defendant's motion to dismiss plaintiff's Eighth Amendment claim, plaintiff has shown a substantial likelihood of success on the merits with respect his claim regarding outdoor exercise (but not "full-fledged" exercise, i.e., weight lifting equipment).  Furthermore, plaintiff has alleged serious mental issues as a result of the continuous, very long-term deprivation of outdoor exercise, including claims of a suicide attempt and other self-harming behavior.  Therefore, plaintiff has adequately alleged irreparable harm that is not purely speculative, particularly given the lengthy continuous nature of the deprivation alleged.  While generally prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively, this court finds that exceptional and compelling circumstances exist here given the continuous, very long-term deprivation involved.  In addition, the court finds that the threatened injury to plaintiff outweighs the purported injury to the defendants if plaintiff is granted some outside exercise.  Also, the court finds that some of the requested relief (namely, limited outdoor exercise) is not adverse to the public interest.  The court recognizes that the CDOC has

Case 1:10-cv-03052-CMA-MJW   Document 45   Filed 02/23/12   USDC Colorado   Page 7 of 25

a difficult duty to maintain the safety and security within each of its facilities.  However, defendants have not shown that providing a long-term ad seg inmate with at least one hour of outdoor exercise each week is unduly injurious to such safety and security concerns.  In addition, there has been no showing that there are circumstances where ensuring this plaintiff's safety requires he not be exposed to outdoor recreation.  It is thus recommended that the plaintiff's motion for a preliminary injunction be granted to the extent that he be provided with at least one hour of outdoor exercise per week.  Of course, such outdoor recreation could be withheld for some limited period of time based upon disciplinary violations.

### B.  Defendants' Motion to Dismiss

Defendants seek dismissal of the Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) to the extent plaintiff brings this action against the defendants in their official capacities, the defendants are immune from damages; (2) plaintiff's claims that accrued prior to December 15, 2008 (two years prior to the date he commenced this action) are barred by the statute of limitations; (3) to the extent plaintiff asserts an Eighth Amendment claim for the denial of outdoor exercise, he fails to state a claim upon which relief can be granted; (4) to the extent he asserts a violation of his Equal Protection rights, his claim fails to state a claim upon which relief can be granted; (5) plaintiff's claim for damages is limited by the Prison Litigation Reform Act's ("PLRA") physical injury requirement; and (6) to the extent plaintiff brings this action against the defendants in their individual capacities, they are entitled to qualified immunity.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Twombly,

550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right

to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across

the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus,

the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in

support of the pleaded claims is insufficient; the complaint must give the court reason to

believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

*these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007) (quoting Twombly, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope

of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'"  Khalik v. United Air Lines, – F.3d –,

2012 WL 364058, at *2 (10th Cir. Feb. 6, 2012).  The Circuit court has further

"noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  Khalik, supra at *2 (quoting Iqbal, 129 S. Ct. at 1949)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id.

(1)  Official Capacity Claims.  Defendants first assert that to the extent plaintiff brings this action against them in their official capacities, the defendants are immune from damages.  A reading of the rambling Prisoner Complaint seems to indicate that plaintiff is not seeking damages against the defendants in their official capacities.  In any event, to make it clear, it is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a

federal court from assessing damages against state officials sued in their official

capacities because such suits are in essence suits against the state." Hunt v. Bennett,

17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's § 1983

claims against the defendants may be against the defendants in their official capacities

for monetary damages, such relief is barred by the Eleventh Amendment, and any such

claim should be dismissed with prejudice.

(2)  Statute of Limitations.   Defendants next assert that the plaintiff's claims that

accrued prior to December 15, 2008 (two years prior to the date the Prisoner Complaint

was filed) are barred by the statute of limitations.   "At the motion-to-dismiss stage, a

complaint may be dismissed on the basis of a statute-of-limitations defense only if it

appears beyond a doubt that Plaintiff[] can prove no set of facts that toll the statute."

Matthews v. Wiley, 740 F. Supp. 2d 1159, 1168 (D. Colo. 2010) (quoting Tello v. Dean

Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.13 (11th Cir. 2005)).  Plaintiff's § 1983

claims are governed by the two-year statute of limitations contained in § 13-80-102,

C.R.S.; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated

Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law,

rather than state law, determines when a federal claim accrues.  The statute of

limitations begins to run when the plaintiff knows or has reason to know of the existence

and cause of injury which is the basis of his action.  Kripp v. Luton, 466 F.3d 1171, 1175

(10th Cir. 2006); Industrial Constructors Corp. v. United States Bureau of Reclamation,

15 F.3d 963, 969 (10th Cir. 1994).  Here, plaintiff would have reason to know of the

existence and cause of his alleged injuries when he started being denied outdoor

exercise, which according to the Complaint was seven or eight years before this action

11

was commenced.  There is nothing in the Prisoner Complaint that would suggest tolling would be appropriate.  Therefore, plaintiff's claims concerning  the continual denial of outdoor exercise which are based upon events prior to December 12, 2010, the date plaintiff allegedly mailed his Prisoner Complaint (see Docket No. 1 at 20), are time barred.

(3)  Eighth Amendment Claim Regarding Outdoor Exercise.  Defendants next contend that to the extent plaintiff asserts an Eighth Amendment claim for the denial of outdoor exercise, he fails to state a claim upon which relief can be granted. The Supreme Court has extended the Eighth Amendment's reach beyond punishments that are "physically barbarous."  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  When a punishment is not alleged to be "physically barbarous," there must have been unnecessary and wanton infliction of pain.  Id. at 346.  The "unnecessary and wanton" standard includes punishments that are "so totally without penological justification" as to result in the "gratuitous infliction of suffering."  Gregg v. Georgia, 428 U.S. 153, 183 (1976).  When physical abuse is not alleged, the actions must represent more than an ordinary lack of due care for the prisoner's interest or safety.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."  Id.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."  Id.

Furthermore, in conditions-of-confinement cases, the prisoner much establish "deliberate indifference" to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S.

12

825 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "The Eight Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id.

Here, defendants assert that plaintiff has failed to allege that he has been denied the basic necessities of survival such as food, drink, sleep, sanitation, hygiene materials, bedding, and utilities. Furthermore, they assert that

> courts have consistently rejected Oakley's contention that the lack of outdoor exercise constitutes a per se Eighth Amendment violation, particularly where the prisoner gets at least an hour of exercise per week and some fresh air. *See Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987). In fact, the Tenth Circuit has also found that the lack of outdoor exercise or exposure to the sun was offset by an inmate's regular out-of-cell exercise and affirmed the dismissal of a claim suggesting otherwise as legally frivolous. *See Pasorius v. Romer*, 97 F.3d 1465, [sic] (10th Cir. 1996) (unpublished opinion attached hereto as Exhibit A).

> The offender population at the Colorado State Penitentiary and the Centennial Correctional Facility are managed with the stratified quality of life program, as set forth in Operational Memorandum (OM) 650-100, attached hereto as Attachment A), based on increased levels of privileges for demonstrated appropriate offender behavior and program compliance. (*See* Exhibit B, p. 1 OM 650-100(I)). In accordance with the Operational Memorandum, Oakley is permitted one hour of out-of-cell exercise in one of the exercise areas five days per week. (*See Id.* At 2, OM 650-100(IV)(A)(14)). Thus, Oakley is permitted five hours a week of out-of-cell time, which includes exercise time in the exercise area. . . . The difference between what Oakley seeks and what he is currently provided is not sufficient to implicate the constitution. The Tenth Circuit upheld the use of an indoor exercise room when an inmate is in administrative segregation.

> Finally, although the district court did not explicitly address
> Mr. James' claim for cruel and unusual punishment based on
> a deprivation of fresh air and exercise, we find this claim
> groundless.  We have held that a prison exercise cell in an
> administrative segregation unit meets the minimum
> standards for exposure to fresh air and exercise.  *See
> Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994).  Mr.
> James has not alleged that he was prevented from
> exercising in the administrative segregation unit's exercise
> cell.  Thus, this claim also properly was dismissed.

*James v. Wiley*, 125 F.3d 862 (10th Cir. 1997) (unpublished opinion
Attached as Exhibit C).  Because Oakley has failed to allege that he has
been denied the minimal necessities of civilized life, his Eighth
Amendment claim as alleged in claim four must fail.

(Docket No. 24 at 5-7).

Last year, however, in a similar case, Judge Krieger denied the entry of summary

judgment to the defendants on an inmate's claim that his placement in ad seg without

any outdoor exercise since November 2008 (or for a period of two years and five

months), which is significantly shorter than the length of the deprivation of outdoor

exercise alleged by plaintiff in this case.  Parker v. Zavaras, 2011 WL 1211487, at *12-

13 (D. Colo. Mar. 31, 2011).  Judge Krieger addressed the same arguments raised by

the defendants here and found as follows with respect to this claim:

> As noted *supra,* an Eighth Amendment claim has both an objective
> component—whether the deprivation is sufficiently serious—and a
> subjective component—whether the official acted with a sufficiently
> culpable state of mind. See *Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803,
> 809 (10th Cir. 1999) (citing *Wilson v. Seiter,* 501 U.S. 294, 298–99
> (1991)). The objective component is satisfied by a showing of
> unnecessary and wanton infliction of pain, sentences that are grossly
> disproportionate to the severity of the crime, or conditions that result in an
> unquestioned and serious deprivation of basic human needs. *See Mitchell
> v. Maynard,* 80 F 511 U.S. 825, 832 (1994)). In cases challenging the
> conditions of a prisoner's confinement, the subjective standard is one of
> deliberate indifference to inmate health or safety. *See Perkins,* 165 F.3d at
> 809 (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). A court may

infer that a prison official knew of a substantial risk from the very fact that the risk was obvious.

With respect to outdoor exercise, the Tenth Circuit has acknowledged that some degree of regular outdoor exercise is important to prisoners' psychological and physical well being. *See Bailey v. Shillinger,* 828 F.2d 651, 653 (10th Cir. 1987). **It has also determined that although denial of outdoor exercise is not a *per se* Eighth Amendment violation, continuous and prolonged denial of outdoor exercise can constitute an Eighth Amendment claim. *See Fogle v. Pierson,* 435 F.3d 1252, 1260 (10th Cir.2006) (finding that an extended deprivation of outdoor exercise (three years) was a sufficiently serious deprivation).** *But see Ajaj v. United States,* 293 Fed. App'x, 584 (10th Cir. 2008) (unpublished) (concluding that deprivation of outdoor exercise for a year was insufficiently serious to constitute an Eighth Amendment violation).

Mr. Parker states that he has not been provided any outdoor exercise since November 2008, and for purposes of this motion, the Defendants agree. This would mean that Mr. Parker has had no outdoor exercise for approximately two years and five months. **Viewed solely from a temporal perspective, a reasonable factfinder could determine that the denial of outdoor exercise for such an extended amount of time is sufficiently serious and that the CDOC acted with deliberate indifference in denying any outdoor exercise for this amount of time.** *See Fogle,* 435 F.3d at 1260.

The Defendants justify Mr. Parker's inability to exercise outdoors by saying that this is a function of CDOC rules. **Inmates at CSP are categorically denied access to outdoor recreation, in order to create an incentive for inmates to exhibit good behavior and earn a transfer to CCF, where outdoor exercise is permitted. This argument misses the mark. Continuous and prolonged deprivation of outdoor exercise can constitute an Eighth Amendment violation, regardless of whether the motives for withholding access to the outdoors are benign or malevolent. This is not to say that CDOC cannot use the carrot of greater outdoor recreation as an inducement to CSP inmates to reform their behavior; indeed, the caselaw cited above recognizes that outdoor recreation can be withheld for some limited period of time without running afoul of the Eighth Amendment. But at some point in time—a point in time not susceptible to the drawing of a bright line rule—the deprivation of all outdoor exercise for a prolonged period becomes a constitutional violation regardless of whether it is imposed for corrective or vindictive reasons.**

. . .

> **Finally, the Defendants' general assertion that prison management should be left to the discretion of prison officials is unavailing. There may be circumstances where ensuring an inmate's safety requires that he/she not be exposed to outdoor recreation, but such showing has not been made in this case.** The showing by Mr. Parker is sufficient for a *prima facie* claim, and accordingly, summary judgment on this claim is **DENIED.**

Id. at *12-13 (emphasis added) (footnote omitted).  Judge Krieger further noted:

> **The CDOC's argument that exercise in an exercise room is sufficient is not persuasive.** The case that it cites, *James v. Wiley,* 125 F.3d 862 (Table), 1997 WL 606985, at *2 (10th Cir. Oct. 2, 1997) (unpublished), does not support such a proposition. In *James,* the Tenth Circuit stated that "[w]e have held that a prison exercise cell in an administrative segregation unit meets the minimum standards for exposure to fresh air and exercise." For this proposition *James* cited to *Housley v. Dodson,* 41 F.3d 597, 599 (10th Cir. 1994). *Housley,* however, did not conclude that exercise in a prison cell was adequate to meet the outdoor exercise requirement. Rather, *Housley* determined that a  prisoner's allegation that he had received only thirty minutes of out of cell exercise during a three month period was sufficient to state an Eighth Amendment claim. In making this determination, *Housley* observed that constitutes adequate exercise will depend on the circumstances of each case, including the physical characteristics of the cell and jail and the average length of stay of the inmates." **This is not inconsistent with *Fogle's* conclusion that continuous and prolonged denial of outdoor exercise can run afoul of the Eighth Amendment**. *See* 435 F.3d at 1260.

Id. at *12 n.17 (emphasis added).  For the reasons stated by Judge Krieger in Parker,

this court finds that the plaintiff has stated a plausible Eighth claim upon which relief can

be granted so as to withstand defendants' motion to dismiss.  Furthermore, for the same

reason, this court finds that the plaintiff has a substantial likelihood of success on the

merits for purposes of his motion for a preliminary injunction as it pertains to the

deprivation of outdoor recreation.

16

This court further finds, however, that plaintiff has not stated a claim with respect to his allegations regarding the lack of "full-fledged" exercise, i.e., weight lifting equipment.  See Brooks v. Medina, 2011 WL 4962187, at *5 (D. Colo. Oct. 17, 2011) (Inmate "has no constitutional right to . . . access to weightlifting equipment per se."). Therefore, it is recommended that Claim Two be dismissed with prejudice.

(4)  Equal Protection.  Defendants next assert that to the extent plaintiff asserts a violation of his Equal Protection rights, his claim fails to state a claim upon which relief can be granted.  Defendants argue that plaintiff has not alleged he was treated differently than others similarly situated, that there is no constitutional requirement that every inmate be treated in an identical manner, that no two inmates are exactly alike, and that an individualized decision does not violate the Equal Protection Clause.  In addition, they contend that the fact that other inmates have been treated differently or even that plaintiff has been treated differently in the past does not create a cognizable equal protection claim.  Further, they assert that plaintiff fails to allege that he was treated differently because of any suspect classification, or alternatively, that he was treated differently than those similarly situated without regard to a legitimate penological purpose.  Therefore, they contend that the plaintiff's equal protection claim should be dismissed.

"The Equal Protection Clause requires the government to treat similarly situated people alike. . . .  In order to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]."  Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998). In his Prisoner Complaint, plaintiff alleges that another ad seg inmate, Reub, filed

17

another action in this court alleging denial of outdoor recreation to ad seg inmates, and Reub received an injunction to receive outdoor recreation.  The court takes judicial notice of the court's CM/ECF system which it searched for cases filed by inmate Rueb.  One of the cases, Civil Action No. 10-cv-02725-LTB, was commenced in November 2010 by Reub and twenty-two other plaintiffs, including plaintiff here, challenging the lack of outdoor exercise for ad seg inmates at various DOC correctional facilities, including but not limited to the Colorado State Penitentiary, Colorado State Penitentiary II, San Carlos Correctional Facility, and Sterling Correctional Facility. The court, however, denied joinder in that action and dismissed without prejudice all plaintiffs except Rueb and allowed the dismissed plaintiffs to initiate separate actions if they chose.  Eventually, however, Rueb's case was dismissed with prejudice by Senior Judge Lewis T. Babcock on October 6, 2011.  (See Docket No. 34 in Civil Action No. 10-cv-02725-LTB).  The dismissal was based upon plaintiff's dilatory and litigation conduct.  Contrary to plaintiff's assertions here that Reub was granted a preliminary injunction, this court has found no docket entry reflecting the issuance of such an order.  Therefore, plaintiff has not made a showing that he was treated differently than others similarly situated.

In any event, "[t]o state an equal protection claim where no suspect class is involved," plaintiff must not only show that he is similarly situated to other inmates who were treated differently, but he must also show that "the difference in treatment bears no rational relation to legitimate penological interests." Deberry v. Davis, 2011 WL 1258509, at *4 (D. Colo. Mar. 31, 2011) (citing Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir. 2006)).  Plaintiff has made no such specific averments in his pleadings.

18

Accordingly, it is recommended that the plaintiff's equal protection claim be dismissed.

(5)  <u>PLRA Physical Injury Requirement.</u>  Next, defendants assert that the plaintiff's claim for damages is limited by the PLRA's physical injury requirement. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted. The underlying substantive violation . . . should not be divorced from the resulting injury, such as "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e).  The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.

<u>Searles v. VanBebber</u>, 251 F.3d 869, 876 (10th Cir. 2001), <u>cert. denied</u>, 536 U.S. 904 (2002).

In this case, because plaintiff did not allege any physical injury as a result of the denial of outdoor exercise (he did allege some physical deterioration as a result of lack of weight lifting equipment, but it has been recommended above that such claim be dismissed), he would be unable to recover compensatory damages pursuant to 42 U.S.C. § 1997e(e).  <u>See</u> <u>Tribe v. Snipes</u>, 2001 WL 1141317, *1 (6th Cir. Sept. 17, 2001) (Inmate's stress, which inmate said could cause him to have a heart attack, chest pains, and a cold, numb left arm did not constitute a physical injury for purposes of § 1997e(e)); <u>Pruitt v. Simmons</u>, 1997 WL 689509 (10th Cir. Oct. 23, 1997) (District court did not err by dismissing plaintiff's damages claims based upon prisoner's allegations that defendants caused him extreme fear, stress, and terror.);

19

Todd v. Graves, 217 F. Supp.2d 958, 960 (S.D. Iowa 2002) (Inmate alleged that the stress induced by the defendants' actions elevated his blood pressure to an unspecified level, aggravated his hypertension, and that he now suffered from dizziness, insomnia, and loss of appetite.  The court noted "these are all symptoms typically associated with people suffering stress or mental distress.  Prison itself is a stressful environment.  If the symptoms alleged by [plaintiff] were enough to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), very few plaintiffs would be barred by the physical injury rule from seeking compensation on claims for emotional distress.  The court has no basis upon which to conclude that result was intended by Congress."); Foster v. Captain, York County Jail, 2002 WL 14425, *2 (D. Me. Jan. 4, 2002) (While inmate complained of poor sleep and an upset stomach, he did not allege that he suffered actual physical injury as a result of the defendant's conduct, and thus the complaint was subject to dismissal pursuant to § 1997e(e)); Turner v. Schultz, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (Prisoner's claims were barred by § 1997e(e) because he alleged that defendants' actions caused him "severe emotional stress and loss of enjoyment of life," but he did not assert any physical injury connected with the defendants' actions.); Cannon v. Burkybile, 2000 WL 1409852 (N.D. Ill. Sept. 25, 2000) (Inmate's allegations that he suffered headaches, insomnia, stress, and stomach anxiety did not sufficiently meet the physical injury requirement under § 1997e(e)); McGrath v. Johnson, 67 F. Supp.2d 499 (E.D. Pa. Sept. 24, 1999) (Inmate's assertion that alleged constitutional violations caused an emotional trauma which manifested itself by causing a preexisting skin condition to become inflamed did not satisfy § 1997e(e)), aff'd, 2002

20

WL 1271713 (3d Cir. May 24, 2002); Cain v. Commonwealth of Va., 982 F. Supp. 1132, 1135 n.3 (E.D. Va. 1997) (Inmate's complaints of depression, unbearable headaches causing vision loss and requiring pain medication, numbness, joint and back pain, black-outs, and stomach cramps and being subject to public embarrassment and humiliation which increased the pain and suffering did not constitute physical injury within scope of § 1997e(e)); Pinkston-Bey v. DeTella, 1997 WL 158343, *3 (N.D. Ill. Mar. 31, 1997) (severe headaches not physical injury)).

However, even in the absence of a showing of physical injury, § 1997e(e) does not bar recovery of nominal or punitive damages for a constitutional violation. Searles, 251 F.3d at 879, 881.  "[A]n award of nominal damages is mandatory upon a finding of a constitutional violation . . . ." Id. at 879.  Furthermore, "as a general rule, punitive damages may be recovered for constitutional violations without a showing of a compensable injury." Id. at 880.  To obtain punitive damages under § 1983, plaintiff must show that defendants' conduct was "'motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others.'" Id. (quoting Smith v. Wade, 561 U.S. 30, 56 (1983)).  Therefore, plaintiff's Prisoner Complaint, to the extent it seeks punitive damages (albeit with respect to any violation of his constitutional rights, not those of other inmates) survives the motion to dismiss.

(6)  Qualified Immunity.  Finally, defendants assert that to the extent plaintiff brings this action against the defendants in their individual capacities, they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  It "balances

two important interests - the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably."  Id.  "Qualified

immunity shields an officer from suit when [he] makes a decision that, even if

constitutionally deficient, reasonably misapprehends the law governing the

circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

"Because the focus is on whether the officer had fair notice that [his] conduct was

unlawful, reasonableness is judged against the backdrop of the law at the time of

the conduct.  If the law at that time did not clearly establish that the officer's

conduct would violate the Constitution, the officer should not be subject to liability

or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears

the burden of showing that: (1) the defendants' actions violated a constitutional or

statutory right; and (2) the right was clearly established and reasonable persons in

the defendants' position would have known their conduct violated that right."  Cruz

v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The Supreme

Court has held that the federal courts have discretion to determine "which of the

two prongs of the qualified immunity analysis should be addressed first in light of

the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S.

at 232.

"Requiring the law to be clearly established provides defendants with 'fair

warning' that their conduct is unconstitutional."  Mimics, Inc. v. Village of Angel

Fire, 394 F.3d 836, 841 (10th Cir. 2005).  "The law is clearly established when a

Supreme Court or Tenth Circuit decision is on point, or if the clearly established

weight of authority from other courts shows that the right must be as plaintiff

maintains."  Id. (quotations omitted).  To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.  This
> is not to say that an official action is protected by qualified immunity
> unless the very action in question has previously been held unlawful,
> but it is to say that in the light of pre-existing law the unlawfulness
> must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).  "Thus,

qualified immunity leaves ample room for mistaken judgments, . . . and protects all

but the plainly incompetent or those who knowingly violate the law."  Harman v.

Pollock, 586 F.3d 1254, 1261 (10th Cir. 2009) (internal quotations omitted).

Here, defendants contend that the plaintiff has failed to meet either prong of

the qualified immunity analysis.  First, they contend that he failed to demonstrate a

violation of a constitutional right, but even assuming plaintiff did so, they contend

they are nevertheless entitled to qualified immunity because their action did not

violate clearly established law.  This court disagrees with the defendants.  As

Judge Krieger noted, "With respect to outdoor exercise, the Tenth Circuit has

acknowledged that some degree of regular outdoor exercise is important to prisoners'

psychological and physical well being. *See Bailey v. Shillinger,* 828 F.2d 651, 653 (10th

Cir. 1987).  It has also determined that although denial of outdoor exercise is not a *per*

*se* Eighth Amendment violation, continuous and prolonged denial of outdoor exercise

can constitute an Eighth Amendment claim. *See Fogle v. Pierson,* 435 F.3d 1252, 1260

(10th Cir. 2006) (finding that an extended deprivation of outdoor exercise (three years) was a sufficiently serious deprivation).”  Parker v. Zavaras, 2011 WL 1211487, at *12 (D. Colo. Mar. 31, 2011).

Particularly in view of the Tenth Circuit's reported ruling in Fogle, which was issued in 2006, this court finds that the defendants here are not entitled to qualified immunity on the plaintiff's Eighth Amendment claim concerning outdoor exercise.

### C.  Plaintiff's Motion to Challenge the Constitutionality of the P.L.R.A.'s Exaustion [Sic] Rule 7 Certificate of Intervention of U.S.

Plaintiff has filed a Motion to Challenge the Constitutionality of the P.L.R.A.'s Exaustion [Sic] Rule 7 Certificate of Intervention of U.S. (Docket No. 41).  Defendants did not file a response to this motion.  In this rambling motion, plaintiff contends that the PLRA “is unconstitutional in the sense it could result in dissal [sic] of marititious [sic] suit's [sic].”  (Docket No. 41 at 2).  He recites a litany of “Questions of constitutional concern's,” such as whether it is constitutional to dismiss a suit when someone's life or health is at stake and whether the exhaustion rules should be relaxed if the claims are meritorious.  He asks the “courts to certify [his] challenge to the P.L.R.A. exhaustion Rule; i am entitled as Justice so requires it.” (Docket No. 41 at 3).  Plaintiff's claims, however, have not been dismissed here on exhaustion grounds, and the defendants have not even alleged non-exhaustion as a basis for dismissal.  In any event, the court notes that the Supreme Court has interpreted and enforced the PLRA's exhaustion rule, 42 U.S.C. § 1997e(a), Jones v. Bock, 549 U.S. 199 (2007); Porter v. Nussle, 534 U.S. 516 (2002); Booth v.

24

Churner, 532 U.S. 731 (2001).  This court thus recommends that plaintiff's motion be denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Plaintiff's Motion for Preliminary Injunctive Relief Fed. R. Civ. P. 65 (Docket No. 21) be **granted** to the extent that an order be entered directing the defendants to provide the plaintiff with at least one hour of outdoor exercise each week as discussed in the text above.  It is further

**RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 24) be **granted in part and denied in part**.  More specifically, it is recommended that the following claims be dismissed with prejudice: (1) any claim for damages against the defendants in their official capacities, (2) any claims concerning actions alleged to have occurred before December 10, 2008, (3) Claim Two concerning denial of "full fledged" exercise (i.e., weight lifting equipment), and (4) plaintiff's claim for compensatory damages.  In all other respects, the motion to dismiss should be denied.  It is further

**RECOMMENDED** that Plaintiff's Motion to Challenge the Constitutionality of the P.L.R.A.'s Exaustion [Sic] Rule 7 Certificate of Intervention of U.S. (Docket No. 41) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need**

not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  February 23, 2012              <u>s/ Michael J. Watanabe</u>
          Denver, Colorado            MICHAEL J. WATANABE
                                      United States Magistrate Judge