**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-03052-CMA-MJW

JACOB DANIEL OAKLEY,

    Plaintiff,

v.

TOM CLEMENTS, in his official and individual capacities as the Executive Director of the Colorado Department of Corrections; and
TRAVIS TRANI, in his official capacity as the Warden of the Colorado State Penitentiary and the Centennial Correctional Facility;

    Defendants.

___

**SECOND AMENDED COMPLAINT**
___

Plaintiff Jacob Daniel Oakley, by and through his counsel, Jacob Licht and David H. Stacy, submits his Second Amended Complaint for violation of his rights under the Eighth and Fourteenth Amendments to the Unites States Constitution and respectfully alleges as follows:

### I.     JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States and is brought pursuant to Title 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

2. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## II. PARTIES

3. Plaintiff JACOB DANIEL OAKLEY is a citizen of the United States and resident of Colorado and is, and at all times relevant to this action, has been an inmate incarcerated by the Colorado Department of Corrections ("CDOC"). During the majority of Mr. Oakley's incarceration by CDOC, he has been housed, in an administrative segregation unit, at the Colorado State Penitentiary ("CSP") and at the Centennial Correctional Facility – South Facility ("CSP II").

4. Defendant TOM CLEMENTS is a citizen of the United States and resident of Colorado and, as the Executive Director of the CDOC, is the state official who manages, supervises and controls the State of Colorado's correctional facilities where Mr. Oakley is and has been incarcerated. In this capacity, Defendant Clements is responsible for the custody and care of Mr. Oakley and all inmates incarcerated by CDOC. Defendant Clements oversees all employees at CDOC. He is responsible for developing and implementing, and is the one and only individual with the ultimate duty and power to alter, the policies and practices which have resulted in the violation of Mr. Oakley's constitutional rights while incarcerated by the CDOC, including the prolonged and continuous denial of outdoor exercise opportunities. Mr. Clements has specifically exercised this authority during periods when he knew, or had constructive knowledge of the fact, that Mr. Oakley's constitutional rights were being violated. Despite having a personal duty and the actual power to do so, Mr. Clements refused to take any action to

end this violation and therefore caused Mr. Oakley to be subject to a violation of his Eighth Amendment rights. All of Defendant Clements' acts or omissions alleged in this action have been and are being carried out under color of state law and he is being sued in both his official and individual capacities.

5. Defendant TRAVIS TRANI is a citizen of the United States and resident of Colorado and, as the warden of CSP and CSP II, is responsible for the custody and care of Mr. Oakley, and all other inmates, while incarcerated at these facilities. He manages, supervises, and controls all employees and operations at CSP and CSP II and is responsible for developing and implementing, and has the authority to establish and alter, the policies and practices which have resulted in the violation of Mr. Oakley's constitutional rights while incarcerated at CSP and CSP II, including the denial of outdoor exercise opportunities for years at a time. All of Defendant Trani's acts or omissions alleged in this action have been and are being carried out under color of state law and he is being sued in his official capacity.

### III. FACTUAL ALLEGATIONS

6. Mr. Oakley was born on November 13, 1986 and was first received for incarceration by CDOC on September 16, 2004 at the age of 17 years.

7. Mr. Oakley was placed into solitary confinement, referred to as "administrative segregation" by Defendants, on October 13, 2004.

8. On January 11, 2005, after intake and processing by Defendants, Mr. Oakley was transferred by Defendants to a cell in an administrative segregation housing unit at CSP.

9. On September 27, 2010, Mr. Oakley was transferred by Defendants to a cell in an administrative segregation housing unit at CSP II, where he remained until January 31, 2012. The size and design of his cell at CSP II is similar to that at CSP.

10. On January 31, 2012, Mr. Oakley was transferred by Defendants back to an administrative segregation housing unit at CSP.

11. Mr. Oakley has, to this day and during the entire duration of his incarceration by CDOC, been continuously housed by Defendants in solitary confinement for a period of approximately 8 years and 1 month, and counting. For the significant majority of this period, Defendants have housed Mr. Oakley in CSP and CSP II.

12. During Mr. Oakley's incarceration at CSP and CSP II, Defendants have denied him any opportunity to exercise outside, or otherwise be outside, for a cumulative period of approximately 6 years and 6 months.

13. Mr. Oakley is currently 26 years old.

14. When Mr. Oakley was first incarcerated and processed for intake by Defendants, he was diagnosed by Defendants' medical staff as suffering from, and having a childhood history of, multiple, serious mental illnesses, including but not limited to, bipolar disorder, anti-social personality disorder and probable mental retardation.

15. Within Mr. Oakley's first year of incarceration by Defendants at CSP, he was diagnosed, by Defendants' medical staff, as suffering from deteriorating mental health, including schizophrenia, and as posing a "high" to "extreme" risk of lethal self-harm. Defendants, based on CDOC's own Psychological Code (P-Code) assessment protocol, have classified Mr. Oakley as suffering from serious mental illnesses and exhibiting "extreme" or "high" psychiatric needs.

-5-

16. Mr. Oakley has engaged in repeated self-injurious behavior, including attempted suicide, resulting in physical harm to his body.

17. Despite knowledge of Mr. Oakley's mental health illnesses and history, Defendants have continuously placed Mr. Oakley in the extreme isolation of solitary confinement, without access to the outdoors for years on end, subjecting him to substantial mental and physical health harm. At CSP, Mr. Oakley spent 23 hours per day, or more, in a cell that measures 13 feet in length, by 6 feet, 6 inches in width (at its widest point, which narrows down to 4 feet, 11 inches), by 7 feet, 10 inches in height. This cell has only one narrow window with thick safety glass, measuring 44.5 inches tall by 4.75 inches wide, which is recessed 5.5 inches deep into the cell wall, and is located in the far, rear corner of the cell, over the cell's raised, immovable sleeping platform, such that access to any natural light or views through the window is limited. The total square footage of the cell (not counting the encumbered space taken up by the protruding sleeping platform and toilet) is approximately 80 square feet.

18. Throughout the time periods relevant to this action, Defendants, in their administration and operation of CSP and CSP II, have maintained a blanket policy and practice of denying any outdoor exercise, or other opportunities to be outside, to all administrative segregation inmates at CSP and CSP II, including to Mr. Oakley.

19. During all times relevant to Mr. Oakley's incarceration at CSP and CSP II, Defendants have provided "out-of-cell" time in an "exercise" room for a total of, at most, one hour per day, five times per week.

20. In practice, Defendants' provision of "out of cell" time for "exercise" is more limited due to facility "lockdowns" or for other reasons. Defendants also require that inmates shower during the one hour time allotted for this "out of cell" "exercise" time.

21. The "exercise room" provided by Defendants at CSP and CSP II is not outside. It is inside the building and is entirely enclosed by four walls, a ceiling and a floor. In one corner, the "exercise room" contains two narrow openings, each measuring 5 feet high by 5 inches wide, which are recessed into the wall by a depth of 7 inches. Inside each opening, Defendants have placed thick metal grating with 1-inch square holes. A small amount of air passes through these two openings.

22. This "exercise room" is triangular in shape and measures 13 feet at its longest end, is approximately 9 feet wide and provides approximately 90 square feet of floor space. This is only marginally larger than a typical cell at CSP, including the cell where Mr. Oakley was housed at CSP, which provides approximately 80 square feet of space. The only equipment in the "exercise room" is a pull-up bar.

23. As a result of Defendants' policy and practice, for a cumulative period of approximately 6 years and 6 months, Mr. Oakley has not been outside and has not received the physical and mental health benefits of being outside, including but not limited to the benefits of exposing his skin to sunlight, of feeling natural, unfiltered light enter his pupils and of exiting the extreme isolation of solitary confinement. During this time, Mr. Oakley has not felt any other natural elements on his body, including the wind, rain or snow.

24. Defendants have also denied Mr. Oakley from access to any meaningful physical exercise opportunity that is, truly, out of his cell. Rather, Defendants' policy and practice at CSP

and CSP II has been simply to escort Mr. Oakley, in restraints, a short distance from his 80-square foot cell to a 90-square foot "exercise room." This "exercise room" is effectively another cell that lacks sufficient space or equipment to engage in and receive the health benefits of exercise or otherwise meet basic correctional standards for out of cell exercise. As a result, Mr. Oakley has been unable to engage in sufficient large muscle and cardiovascular activity, or enjoy the other recognized benefits of regularly exiting solitary confinement conditions, suffering physical and mental health injuries.

25. When Mr. Oakley entered CSP at the age of 18 years old, he weighed at least 150 pounds or more. Since then, his body weight, large muscle strength and cardiovascular health have deteriorated dramatically. He recently weighed, just months before being transferred out of CSP, a mere 100 pounds.

26. Mr. Oakley's deteriorating mental health condition has caused him to engage in multiple self-imposed physical injuries to his body, including attempted suicide, non-lethal physical harm to his body and refusal to eat.

27. The impact of Defendants' prolonged denial of outdoor exercise on Mr. Oakley's physical and mental health is even more severe given the extreme isolation and lack of physical space and natural sunlight his mind and body has been subjected to while locked in solitary confinement for 23 hours per day or more for years on end.

28. Defendants' long-term deprivation of the opportunity to exercise outside while housed by Defendants at CSP and CSP II has posed a substantial risk of serious harm to Mr. Oakley's mental and physical health.

29. At all times relevant to this case, Defendants knew and continue to know that their acts and omissions in having prevented Mr. Oakley from engaging in regular outdoor exercise for years on end posed this substantial risk.

30. Defendant Clements knew or had constructive knowledge of clearly established law and correctional standards holding that the prolonged and continuous denial of outdoor exercise, as was being afflicted against Mr. Oakley while Mr. Clements was CDOC's Executive Director, violated the Eighth Amendment. His knowledge, at the very least, was based on pleadings and judicial findings in previous litigation, *see Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006); *Dunlap v. Zavaras* (09-CV-01196); *Parker v. Zavaras*, 2011 WL 1211487 (Mar. 31, 2011); and on-going litigation, *see Anderson v. State of Colorado* (10-CV-01005). In addition, correctional experts had expressly warned Mr. Clements, including in a report commissioned by CDOC, that the denial of outdoor exercise at CSP and CSP II violated correctional standards and that this practice is extreme and unlike the operation of *any other facility in the United States*. *See* Austin, J., et al., "Colorado Department of Corrections Administrative Segregation and Classification Review," National Institute of Corrections Report (October 2011), p. 18; Affidavit of Steve Martin, filed June 16, 2010, in *Dunlap v. Zavaras* (09-CV-01196) (Doc. # 75-2). Moreover, Mr. Clements was personally involved in CDOC's presentation of Austin, J. et al.'s findings at an American Correctional Association workshop in July 2012.

31. Like Nathan Dunlap and Troy Anderson, Mr. Oakley is one of only a small number of CDOC inmates who have been identified by Defendants in their interrogatory responses in this case (identifying eight other inmates) as being housed in administrative segregation for more than eight years. On August 24, 2010, Mr. Oakley filed his first of three

administrative grievances in which he specifically challenged the denial of outdoor exercise as unconstitutional. Therefore, Mr. Clements knew or had constructive knowledge of the fact that Mr. Oakley was being similarly denied outdoor exercise for years on end in violation of his Eighth Amendment rights.

32. Mr. Clements is the one and only CDOC official with the ultimate duty and power to approve the policy change that could have ended the constitutional violations at issue in this case and, despite having ample opportunity to do so, refused to take such action, causing substantial injury to Mr. Oakley. Since becoming Executive Director of CDOC, Mr. Clements participated in an annual review of any and all CDOC policy changes recommended by staff and, through his participation, possessed the ultimate, personal responsibility and discretion for approving or denying such changes. *See* Rule 30(b)(6) Deposition of CDOC Deputy Director of Prisons Larry E. Reid (taken Nov. 6, 2012), p. 35:5-20. For example, CDOC policy was changed in 2011, while Mr. Clements was Executive Director, to allow certain administrative segregation prisoners to be transferred without restraints to recreation opportunities within CDOC facilities, including CSP. *See id.* at pp. 37:19-38:8.

33. While Defendants transferred Mr. Oakley to Sterling Correctional Facility ("Sterling") on September 25, 2012, Defendants have on numerous prior occasions transferred Mr. Oakley back to CSP from another facility.

34. Upon information and belief, some inmates housed in administrative segregation at Sterling are not provided with opportunities for regular outdoor exercise.

35. Absent a change in CDOC policy and practice, or an injunction issued by this Court, Mr. Oakley has no assurance or guarantee that he will not be transferred back to CSP or

otherwise subjected to a long-term denial of exercise at any other facility operated by Defendants, including Sterling.

## IV.   CLAIMS FOR RELIEF

**42 U.S.C. § 1983 and 1988 – Eighth Amendment and Fourteenth Amendment Violations – Cruel and Unusual Punishment**

36. Plaintiff hereby incorporates paragraphs 1 through 35 of this Second Amended Complaint.

37. Defendants, through their acts and omissions as set forth in this Second Amended Complaint, have violated Mr. Oakley's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

38. Defendant Clements is the Executive Director of CDOC and Defendant Trani is the Warden of CSP and CSP II and they, or their predecessors, acting under color of state law, knew and continue to know, that denying Mr. Oakley from the opportunity to engage in regular outdoor exercise for years on end has posed a substantial risk of serious harm to Mr. Oakley's mental and physical health.

39. Defendants were aware of, and continue to be aware of, this risk, as it has been ordered in other cases that such a long-term denial of outdoor exercise is illegal, unconstitutional, dangerous and unjustified, as further supported by widely known correctional standards accepted and practiced at other maximum security facilities across the United States.

40. Mr. Clements knew or had constructive knowledge of the fact that Mr. Oakley was being subjected to a violation of his Eighth Amendment rights. Mr. Clements had the sole, ultimate duty and power to change the policy and practices that directly resulted in such violation and he personally chose not to act, causing substantial injury to Mr. Oakley.

41.     Defendants have acted and continue to act deliberately and with indifference to this risk, and continue to deny any opportunities for regular outdoor exercise to administrative segregation inmates at CSP and CSP II.  Defendant's application of this policy and practice to Mr. Oakley, for approximately six years and six months, where Defendants knew that Mr. Oakley suffered from severe mental illness including suicidal episodes, constitutes a grossly reckless and shocking disregard for Mr. Oakley's physical and mental health.

42.     Defendants' denial of outdoor exercise is also an excessive and disproportionate punishment that constitutes cruel and unusual punishment.

43.     An actual and immediate controversy exists between Mr. Oakley and Defendants, and Mr. Oakley is entitled to declaratory and injunctive relief.  Defendants are currently enforcing the challenged policy and practice at CSP.  As a result of this policy, Mr. Oakley has suffered irreparable injury.  Absent a declaration of Mr. Oakley's rights and issuance of a permanent injunction by this Court, Mr. Oakley will continue to suffer from a real and immediate threat of being subject to the challenged policy and practice, suffering further irreparable injury.

44.     Mr. Oakley has suffered, and continues to suffer, from significant mental and physical harm and damage as a result of Defendants' acts and omissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law, including but not limited to, the following:

a. Declaratory relief that the acts, omissions, policies, practices and conditions described above violated and continue to violate the Eighth and Fourteenth Amendments;

b. Permanently enjoin Defendants from subjecting Plaintiff to the unconstitutional and unlawful acts, omissions, policies, practices and conditions described above;

c. Compensatory damages, including, but not limited to his physical and emotional pain, suffering, mental anguish, and other nonpecuniary losses;

d. Punitive damages for all claims allowed by law in an amount to be determined at trial;

e. Pre-judgment and post-judgment interest at the highest rate permissible under law;

f. Attorney's fees and costs; and

g. Such further relief as justice requires.

Respectfully submitted this 3rd day of December, 2012.

s/   Jacob Licht
Jacob Licht
TEMKIN WIELGA & HARDT LLP
1900 Wazee St., Suite 303
Denver, CO  80202
Telephone: (303) 292-4922
Facsimile: (303) 292-4921
*Licht@twhlaw.com*

David H. Stacy
KELLY STACY & RITA LLC
1401 17th Street, Suite 925
Denver, CO 80202
Telephone: (720) 236-1800
Facsimile: (720) 236-1799
*Dstacy@kellystacylaw.com*

*Attorneys for Plaintiff Jacob Daniel Oakley*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2012, I electronically filed the foregoing **SECOND AMENDED COMPLAINT** with the Clerk using the CM/ECF system which will send notification of such filing to the following:

Chris W. Alber
Assistant Attorney General
Civil Litigation & Employment Law Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Chris.alber@state.co.us
*Attorney for Defendants*

In addition, I certify that on this 3rd day of December, 2012, I served my client, Plaintiff Jacob Daniel Oakley, via U.S. mail, the foregoing **SECOND AMENDED COMPLAINT**, to the following address:

Jacob Oakley, #123294
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO  80751
*Plaintiff*

        s/   Jacob Licht
        Jacob Licht
        TEMKIN WIELGA & HARDT LLP
        *Licht@twhlaw.com*
        *Attorneys for Plaintiff Jacob Daniel Oakley*