IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-03052-CMA-MJW

JACOB DANIEL OAKLEY,

Plaintiff(s),

v.

TOM CLEMENTS, in his official and individual capacities as the Executive Director of
the Colorado Department of Corrections, and
TRAVIS TRANI, in his official capacity as the Warden of the Colorado State Penitentiary
and the Centennial Correctional Facility,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
(Docket No. 113)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned by an Order Referring Case entered

by Judge Christine M. Arguello on January 27, 2011.  (Docket No. 9).

## PLAINTIFF'S ALLEGATIONS

Plaintiff commenced this action pro se but is now represented by *pro bono*

counsel.  The operative pleading is the Second Amended Complaint, which was filed by

counsel on January 29, 2013, and is brought pursuant to 42 U.S.C. §§ 1983 and 1988.

(Docket No. 110).  Plaintiff alleges violations of the Eighth and Fourteenth Amendments

for cruel and unusual punishment based upon his placement in solitary confinement in

an administrative segregation ("ad seg") unit in Colorado State Penitentiary ("CSP") and

the Centennial Correctional Facility - South Facility ("CSP II") with prolonged,

continuous denial of outdoor exercise opportunities, which has subjected him to substantial harm to his mental and physical health.

More specifically, plaintiff's allegations in this pleading including the following. Despite knowledge of plaintiff's mental health illnesses and history, defendants have continuously placed him in the extreme isolation of solitary confinement without access to the outdoors for years on end.  As of the filing of the Second Amended Complaint, plaintiff had been continuously housed in solitary confinement for a period of approximately eight years and one month.  During his incarceration at CSP and CSP II, he was denied any opportunity to exercise outside, or otherwise be outside, for a cumulative period of approximately 6.5 years.

Plaintiff's cell in which he spent 23 hours per day or more was approximately 80 square feet.  It measured 13 feet in length, 6.5 feet in width at its widest point, which narrows down to 4 feet, 11 inches, by 7 feet, 10 inches, in height.  It had only one narrow window with thick safety glass, measuring 44.5 inches tall by 4.75 inches wide, which was recessed 5.5 inches deep into the cell wall and was located in the far, rear corner of the cell, over the cell's raised, immovable sleeping platform, thereby limiting access to any natural light or views through the window.

Defendants provided "out-of-cell" time in an "exercise room" for a total of at most one hour per day, five times per week.  During that one-hour time period, however, inmates are required to shower.  In practice, the "out-of-cell" time for "exercise" is more limited due to facility lock downs or other reasons.  The "exercise room" provided by defendants at CSP and CSP II is inside the building, entirely enclosed by four walls, a ceiling, and a floor.  It is triangular in shape, measuring 13 feet at its longest end and

approximately 9 feet wide.  It provides approximately 90 square feet of floor space, not much bigger than the plaintiff's cell at CSP, which was 80 square feet.  There are two narrow openings in one corner, each measuring 5 feet high by 5 inches wide, recessed into the wall by a depth of 7 inches, inside of which there is a thick metal grating with 1-inch square holes.  A small amount of air passes through those two openings.  The only equipment in the "exercise room" is a pull-up bar.

Plaintiff has been unable to engage in sufficient large muscle and cardiovascular activity or enjoy the other benefits of regularly exercising in solitary confinement conditions, suffering physical and mental health injuries.  When plaintiff first entered CSP at age 18, he weighed at least 150 pounds, but since then, his body weight, large muscle strength, and cardiovascular health have deteriorated dramatically.  His recent weight, before his transfer out of CSP, was only 100 pounds.  His deteriorating mental health condition has caused him to engage in multiple self-imposed physical injuries to his body, including attempted suicide, non-lethal physical harm to his body, and refusal to eat.

Plaintiff was transferred to Sterling Correctional Facility ("Sterling") on September 25, 2012.  Some inmates at Sterling are not provided with opportunities for regular outdoor exercise.

Plaintiff seeks declaratory relief, a permanent injunction, compensatory and punitive damages, interest, and attorney fees and costs.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is the Defendants' Motion to Dismiss (Docket No. 113) in which defendants seeks dismissal of the Second

4

Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) to the extent plaintiff seeks injunctive and declaratory relief, plaintiff's claim has been rendered moot by subsequent events; (2) to the extent plaintiff asserts his claim against defendant Clements[1] in his individual capacity, he fails to establish the requisite personal participation; (3) plaintiff's relief is limited by the physical injury requirement of the Prison Litigation Reform Act; and (4) to the extent plaintiff brings his claim against defendant Clements in his individual capacity, Clements is entitled to qualified immunity.  Plaintiff, through counsel, filed a Response (Docket No. 118), and defendants filed a Reply (Docket No. 121).  The court has carefully and thoroughly reviewed these motions papers and has considered applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion to dismiss be denied.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

---

[1]The court notes that defendant Clements died on March 19, 2013.

> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts

to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008

WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do . . . ." Twombly, 550 U.S. at 555 (citations omitted). "Factual allegations must be

enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must

'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a

motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could

prove *some* set of facts in support of the pleaded claims is insufficient; the complaint

must give the court reason to believe that *this* plaintiff has a reasonable likelihood of

mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider,

6

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974).

"[P]lausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] 'ha[s] not nudged [his] claim[] across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).  Furthermore, "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  Id.  "[T]he Twombly/Iqbal standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id. at 1191.

**Mootness.**  Defendants first assert that plaintiff's claims for injunctive and declaratory relief have been rendered moot as a result of the plaintiff's transfer to Sterling, which according to the Second Amended Complaint occurred on September

25, 2012.[2]  Defendants assert that plaintiff has not alleged that he will be returned to

CSP and be subjected to the same conditions for a constitutionally impermissible

amount of time or that he is being subjected to the same conditions while being housed

at Sterling.  While plaintiff does assert in his pleading that he has been transferred back

to CSP on numerous occasions, defendants contend that plaintiff's transfer back to CSP

is speculative, as is the length of time he would remain there and whether that length of

time would be constitutionally impermissible.  Defendants assert that as there is no

allegation or reasonable expectation that plaintiff will be exposed to the objectionable

circumstances again and if so, for how long, this is not the type of claim to which an

exception to the mootness doctrine applies.

 "The mootness doctrine provides that although there may be an actual and

justiciable controversy at the time the litigation is commenced, once that controversy

ceases to exist, the federal court must dismiss the action for want of jurisdiction."

Jordan v. Sosa, 654 F.3d 1012, 1023 (10th Cir. 2011) (quotation omitted).  See United

States v. Juvenile Male, 131 S. Ct. 2860, 2864 (2011) ("It is a basic principle of Article III

that a justiciable case or controversy must remain 'extant at all stages of review, not

merely at the time the complaint is filed.'").

 Here, this court finds that an exception to the mootness doctrine should apply.

"One exception to a claim of mootness is a defendant's voluntary cessation of an

---

[2]Defendants assert plaintiff was actually transferred out of CSP to the San Carlos Correctional Facility on August 19, 2012, and was then transferred to Sterling on September 25, 2012.  Thus, defendants assert plaintiff has not been subjected to the conditions of CSP, which are the subject of this suit, since August 19, 2012.  (Docket No. 113 at 4 n.2).

alleged illegal practice which the defendant is free to resume at any time." <u>Rio Grande</u>

<u>Silvery Minnow v. Bureau of Reclamation</u>, 601 F.3d 1096, 1115 (10th Cir. 2010) (quoting

<u>Chihuahuan Grasslands Alliance v. Kempthorne</u>, 545 F.3d 884, 892 (10th Cir. 2008)).

"The rule that 'voluntary cessation of a challenged practice rarely moots a federal case .

. . traces to the principle that a party should not be able to evade judicial review, or to

defeat a judgment, by temporarily altering questionable behavior.'" <u>Id.</u> (quoting <u>Unified</u>

<u>Sch. Dist. No. 259, Sedgwick County, Kan. v. Disability Rights Center of Kansas</u>, 491

F.3d 1143, 1149 (10th Cir. 2007)). "'In other words, this exception exists to counteract

the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot

and then resuming the illegal conduct.'" <u>Id.</u>

 If two conditions are satisfied, voluntary actions may nevertheless moot litigation.

<u>Id.</u>  These two conditions are: "(1) it can be said with assurance that there is no

reasonable expectation that the alleged violation will recur, and (2) interim relief or

events have completely and irrevocably eradicated the effects of the alleged violation."

<u>Id.</u> (quoting <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979)).  "The party

asserting mootness bears the 'heavy burden of persua[ding] the court that the

challenged conduct cannot reasonably be expected to start up again.'" <u>Id.</u> at 1116

(quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167,

189 (2000) (internal quotations omitted)).

 Here, this court finds that the defendants have not met this heavy burden.

Plaintiff's transfer out of CSP was, in part, in response to this litigation.  As noted by

plaintiff in his Response, during a 30(b)(6) deposition taken on November 6, 2012, when

asked if this lawsuit was one reason for transferring plaintiff, Deputy Director of Prisons

9

Larry Reid responded that plaintiff's lawsuit was "part of our [CDOC's] discussion in terms of movement of Mr. Oakley" to Sterling. (Pl.'s Ex. A, Docket No. 118-1 at 72:19-73:5). Defendants have not shown that there is no reasonable expectation that plaintiff will be subjected to the same unconstitutional conduct in the future. Instead, the history of plaintiff's transfers to CSP, the reasons for his prolonged housing at CSP and CSP II, and defendants' own statements concerning the possibility of transferring him back to CSP demonstrate otherwise. More specifically, plaintiff has been transferred into and out of CSP and CSP II for a total of six times and has spent a total of 6.5 years - approximately 25 percent of his entire life - in CSP or CSP II. (See Pl.'s Ex. B, Docket No. 118-2). In the 30(b)(6) deposition, when asked what, if any, limitations would there be on the department's ability to transfer plaintiff from Sterling back to CSP, Deputy Director Reid responded, "Well, there wouldn't be any limitations, but if we see that Mr. Oakley has been successful, you know, that his conduct, behavior is good, we would leave him at Sterling." (Pl.'s Ex. A, Docket No. 118-1 at 64:7-13). When asked "[b]ut if his behavior worsens, you could move him back to CSP; is that right," Reid responded, "That's a possibility. Yes, we could if we chose to do that." (Pl.'s Ex. A, Docket No. 118-1 at 65:14-17). He also stated that, "If Mr. Oakley's behavior was such . . . where he was assaulting staff, [with] feces, throwing feces and urine and those types of things at the staff, it would not be unusual that we would change his environment . . . Moving him back to CSP, where we also have our mental health OMI program; we have additional mental health staff on board at CSP." (Pl.'s Ex. A, Docket No. 118-1 at 60:25-61:12).

 Although it would appear from these statements that plaintiff's transfer back to

CSP may very well hinge on his own behavior, plaintiff notes that records produced by defendants demonstrate he suffers from serious mental illnesses, i.e., bipolar disorder, schizophrenia, anti-social personality disorder, and probable mental retardation, that affect his behavior.  In fact, in August 2012, a Deputy Director Review indicated that plaintiff was classified at that time by the CDOC as a Psychological Code "4N," which plaintiff asserts means he possesses "high psychiatric needs," and he had been convicted of thirteen disciplinary violations in the prior two-year period.  (See Pl.'s Ex. C, Docket No. 118-3).  Therefore, as plaintiff's counsel asserts, it is possible that despite his best efforts, plaintiff may engage in disruptive behavior.

In addition, as plaintiff notes, a large segment of ad seg inmates at Sterling are also not given exercise with direct overhead access to the outdoor elements.  Exercise with direct overhead access to the outdoor elements is provided only to those ad seg inmates housed in "Tier 3 units," which are located on the top level of that housing unit. The inmates housed in "Tier 1" or "Tier 2" units must exercise in rooms completely covered overhead by the concrete floor of the exercise room located directly above. (See Pl.'s Ex. D, Docket No. 118-4).  According to plaintiff's counsel, plaintiff is currently housed in a Tier 3 unit along with the other former CSP inmates who have had to seek judicial relief to achieve this benefit (Troy Anderson and Nathan Dunlap).  This court agrees with plaintiff that under these circumstances, there is at least a possibility that after this suit he will be moved to a lower tier-unit.

The court notes that in their Reply, defendants assert that the doctrine of voluntary cessation is inapplicable here because plaintiff was transferred to Sterling because he indicated to mental health staff that he wanted to go to Sterling, and the

11

mental health staff agreed that would be a good idea.  Plaintiff, however, has shown

that his transfer was based, in part, upon this litigation.  Furthermore, he averred in his

original Complaint that his requests for a transfer in order to get outdoor exercise were

ignored.  (See Docket No. 1 at 9-10).  After over eight years without outdoor exercise,

despite his requests for a transfer, he was not transferred until shortly after *pro bono*

counsel entered an appearance on his behalf in this case.  Based upon the history and

circumstances outlined above, this court does not agree that it can be said with

assurance that there is no reasonable expectation that the alleged violation will recur.

In sum, this court recommends that the plaintiff's prospective claims for

declaratory and injunctive relief not be dismissed as moot.

**Personal Participation.**  Defendants next contend that to the extent plaintiff

asserts his claim against defendant Clements in his individual capacity, he fails to

establish the requisite personal participation by Clements.  "Individual liability under §

1983 must be based on personal involvement in the alleged constitutional violation."

Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  "Because vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution."

Ashcroft v. Iqbal, 129 S. Ct. at 1948.  As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict
> supervisor liability under § 1983." . . .  "This does not mean that a
> supervisor may not be liable for injuries caused by the conduct of one of
> his subordinates.  It does mean that his liability is not vicarious, that is,
> without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights.  To

establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dep't of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).

Here, upon review of the Second Amended Complaint, this court finds that the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face," so as to withstand a motion to dismiss pursuant to Rule 12(b)(6) as against defendant Clements.  Twombly, 550 U.S. at 570.  Plaintiff states in that pleading with respect to defendant Clements, in pertinent part:

4. . . . He is responsible for developing and implementing, and is the one and only individual with the ultimate duty and power to alter, the policies and practices which have resulted in the violation of Mr. Oakley's constitutional rights while incarcerated by the CDOC, including the prolonged and continuous denial of outdoor exercise opportunities.  Mr. Clements has specifically exercised this authority during periods when he knew, or had constructive knowledge of the fact, that Mr. Oakley's constitutional rights were being violated.  Despite having a personal duty and the actual power to do so, Mr. Clements refused to take any action to end this violation and therefore caused Mr. Oakley to be subjected to a violation of his Eighth Amendment rights. . . .

. . .

30.  Defendant Clements knew or had constructive knowledge of clearly established law and correctional standards holding that the prolonged and continuous denial of outdoor exercise, as was being afflicted against Mr. Oakley while Mr. Clements was CDOC's Executive Director, violated the Eighth Amendment.  His knowledge, at the very least, was based on pleadings and judicial findings in previous litigation, *see Fogle v. Pierson*, 435 F.3d 1252 (10th cir. 2006); *Dunlap v. Zavaras* (09-CV-01196); *Parker v. Zavaras*, 2011 WL 1211487 (Mar. 31, 2011); and on-going litigation, *see Anderson v. State of Colorado* (10-CV-01005). In addition, correctional experts had expressly warned Mr. Clements, including in a report commissioned by CDOC, that the denial of outdoor exercise at CSP and CSP II violated correctional standards and that this practice is extreme and unlike the operation of *an other facility in the United States.  See* Austin, J., et al., "Colorado Department of Corrections Administrative Segregation and Classification Review," National Institute of Corrections Report (October 2011), p. 18; Affidavit of Steve Martin filed June 16, 2010, in *Dunlap v. Zavaras* (09-CV-01196) (Doc. # 75-2). Moreover, Mr. Clements was personally involved in CDOC's presentation of Austin, J. et al.'s findings at an American Correctional Association workshop in July 2012.

31.  Like Nathan Dunlap and Tory Anderson, Mr. Oakley is one of only a small number of CDOC inmates who have been identified by Defendants in their interrogatory responses in this case (identifying eight other inmates) as being housed in administrative segregation for more than eight years.  On August 24, 2010, Mr. Oakley filed his first of three administrative grievances in which he specifically challenged the denial of outdoor exercise as unconstitutional.  Therefore, Mr. Clements knew or had constructive knowledge of the fact that Mr. Oakley was being similarly denied outdoor exercise for years on end in violation of his Eighth Amendment rights.

32.  Mr. Clements is the one and only CDOC official with the ultimate duty and power to approve the policy change that could have ended the constitutional violations at issue in this case and, despite having ample opportunity to do so, refused to take such action, causing substantial injury to Mr. Oakley.  Since becoming Executive Director of CDOC, Mr. Clements participated in an annual review of any and all CDOC policy changes recommended by staff, and through his participation, possessed the ultimate, personal responsibility and discretion for approving or denying such changes.  *See* Rule 30(b)(6) Deposition of CDOC Deptuy Director of Prisons Larry E. Reid (taken Nov. 6, 2012), p. 35:5-20.  For example, CDOC policy was changed in 2011,

14

while Mr. Clements was Executive Director, to allow certain administrative segregation prisoners to be transferred without restraints to recreation opportunities within CDOC facilities, including CSP.  *See id.* at pp. 37:19-38:8.

. . .

38.  Defendant Clements is the Executive Director of CDOC and Defendant Trani is the Warden of CSP and CSP II and they, or their predecessors, acting under color of state law, knew and continue to know, that denying Mr. Oakley from the opportunity to engage in regular outdoor exercise for years on end has posed a substantial risk of serious harm to Mr. Oakley's mental and physical health.

39.  Defendants were aware of, and continue to be aware of, this risk, as it has been ordered in other cases that such a long-term denial of outdoor exercise is illegal, unconstitutional, dangerous and unjustified, as further supported by widely known correctional standards accepted and practiced at other maximum security facilities across the United States.

40.  Mr. Clements knew or had constructive knowledge of the fact that Mr. Oakley was being subjected to a violation of his Eighth Amendment rights.  Mr. Clements had the sole, ultimate duty and power to change the policy and practices that directly resulted in such violation and he personally chose not to act, causing substantial injury to Mr. Oakley.

. . .

(Docket No. 110).

Contrary to defendants' assertions, this court finds that plaintiff has pled more than "bare assertions and conclusory statements."  Plaintiff has pled that Clements was the only CDOC official with the ultimate duty and power to approve the policy change that would have ended the alleged constitutional violations, personally reviewed and approved any policy changes through his annual review (which did occur in 2011), and in fact reviewed and approved a policy change in 2011 that addressed how certain ad seg inmates were transferred to recreation opportunities within CDOC facilities, including CSP.  In addition, plaintiff pled that Clements acted with deliberate indifference

and knew or at least had constructive knowledge of plaintiff's situation, noting how few

inmates have been housed in ad seg for such a lengthy period, other litigation

concerning nearly identical Eighth Amendment claims, and a report released in October

2011 that had a major finding and recommendation that access to outdoor recreation at

CSP and CSP II was deficient.  Plaintiff further avers that Clements personally

presented the findings of that report at a workshop in July 2012.  These averments

adequately allege personal involvement by Clements.

Section "1983 allows a plaintiff to impose liability upon a defendant-supervisor

who creates, promulgates, implements, or in some other way **possesses**

**responsibility for the continued operation of a policy** the enforcement (by the

defendant-supervisor or [his] subordinates) of which 'subjects, or causes to be

subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . .

. .'" Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010) (emphasis added)

(clarifying impact of Iqbal on claims of supervisory liability under § 1983).  "A plaintiff

may [] succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1)

the defendant promulgated, created, implemented or possessed responsibility for the

continued operation of a policy that (2) caused the complained of harm, and (3) acted

with the state of mind required to establish the alleged constitutional deprivation."  Id.

The instant case is not one in which plaintiff merely alleges an "abstract authority

over individuals who actually committed a constitutional violation."  Davis v. City of

Aurora, 705 F. Supp.2d 1243, 1263 (D. Colo. 2010).  "The exercise of control which

may create the 'affirmative link' does not need to be the sort of on-the-ground, moment-

to-moment control . . . .   Rather, **the establishment or utilization of an**

**unconstitutional policy or custom can serve as the supervisor's 'affirmative link'**

**to the constitutional violation**. . . .   [W]here an official with policymaking authority

creates, actively endorses, or implements a policy which is constitutionally infirm, that

official may face personal liability for the violations which result from the policy's

application." Id. (emphasis added).

In sum, this court finds that the plaintiff has alleged sufficient facts that set forth

an affirmative link between defendant Clements and the alleged Eighth Amendment

violation and thus recommends that the claims against defendant Clements not be

dismissed at this time on the basis of lack of personal participation.

**Physical Injury.**  Defendants next assert that the plaintiff's relief is limited by the

physical injury requirement of the Prison Litigation Reform Act ("PLRA").  They contend

that plaintiff alleges no physical injury associated with the inability to engage sufficiently

in large muscle and cardiovascular activity and that plaintiff's other allegations amount

to physical manifestations of his alleged psychological distress.  Therefore, defendants

assert that the PLRA bars the plaintiff's compensatory damages claims.

Section 1997e(e) of Title 42, United States Code, provides that "[n]o Federal civil

action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing

of physical injury."  42 U.S.C. § 1997e(e).  Here, a review of the Second Amended

Complaint (Docket No. 110) shows that in addition to alleging mental and emotional

injury, plaintiff has alleged physical injuries which are not injuries merely caused by

17

mental or emotional distress.  For example, he asserts in his pleading that when he

"entered CSP at the age of 18 years old, he weighed at least 150 pounds or more.

Since then, his body weight, large muscle strength and cardiovascular health have

deteriorated dramatically.  He recently weighed, just months before being transferred

out of CSP, a mere 100 pounds."  (Docket No. 110 at 7, ¶ 25).  Accepting the

allegations in the Second Amended Complaint as true and construing them in the light

most favorable to the plaintiff, this court finds that the plaintiff has sufficiently alleged a

physical injury to satisfy the PLRA.  See Anderson v. Colorado, Dep't of Corrections,

848 F. Supp.2d 1291, 1298 (D. Colo. 2012) (Inmate's affidavit, submitted in response to

a summary judgment motion, stating that the lack of outdoor exercise had caused his

muscles to grow weaker, was sufficient to create a fact dispute that prevented summary

disposition of a PLRA argument.); Wagner v. Hartley, 2012 WL 1079185, at * (D. Colo.

Mar. 30, 2012) (Inmate's allegation that he suffered physical injuries in the form of

muscle atrophy, joint pains and aches, and repeated and severe migraine and/or other

headaches due to the lack of exercise, lack of fresh outdoor air, and the mental and

emotional stress from isolation and his fear that the arbitrary and capricious retaliation

would continue alleged sufficient physical injury under the PLRA).  This court cannot

conclude based on this pleading that the plaintiff's allegations are merely a *de minimis*

injury as a matter of law.  Therefore, it is recommended that the defendants' motion to

dismiss plaintiff's claim of compensatory damages be denied at this time.

　　　　The court notes that in their Reply defendants argue that plaintiff cannot establish

how the alleged denial of exercising outdoors has led him to suffer these injuries, and

defendants further assert that, in fact, upon information and belief through facts

18

discovered during discovery in this matter, plaintiff's weight loss was the result of a

hunger strike he recently engaged in and is not the result of being unable to exercise in

the sunlight.  Defendants' motion to dismiss pursuant to Rule 12(b)(6), however, merely

tests the sufficiency of the plaintiff's Second Amended Complaint.  "The court's function

on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might

present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient

to state a claim for which relief may be granted."  Brosh v. Duke, 2012 WL 5289536, at

*2 (D. Colo. Oct. 24, 2012) (Arguello, J.) (quoting Miller v. Glanz, 948 F.2d 1562, 1565

(10th Cir. 1991)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and 'that a recovery is very remote

and unlikely.'"  Twombly, 550 U.S. at 116.  Plaintiff is not required to prove his case in

his pleading, and this court finds that the plaintiff has pled enough facts to state a claim

to relief that is plausible on its face so as to defeat defendants' motion to dismiss.

**Qualified Immunity.**  Defendants also assert that to the extent plaintiff brings his

claim against defendant Clements in his individual capacity, Clements is entitled to

qualified immunity.  "The doctrine of qualified immunity protects government officials

'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  It "balances two important

interests - the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability

when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer

from suit when [he] makes a decision that, even if constitutionally deficient, reasonably

misapprehends the law governing the circumstances [he] confronted." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." <u>Id.</u>

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." <u>Cruz v. City of Laramie, Wyo.</u>, 239 F.3d 1183, 1187 (10th Cir. 2001). The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 555 U.S. at 236.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional." <u>Mimics, Inc. v. Village of Angel Fire</u>, 394 F.3d 836, 841 (10th Cir. 2005). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." <u>Id.</u> (quotations omitted). To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

<u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) (citation omitted)

In a report and recommendation I issued on February 23, 2012 (Docket No. 45), I

addressed defendants' previous argument concerning qualified immunity, stating:

> Here, defendants contend that the plaintiff has failed to meet either prong
> of the qualified immunity analysis.  First, they contend that he failed to
> demonstrate a violation of a constitutional right, but even assuming
> plaintiff did so, they contend they are nevertheless entitled to qualified
> immunity because their action did not violate clearly established law. This
> court disagrees with the defendants.  As Judge Krieger noted, "With
> respect to outdoor exercise, the Tenth Circuit has acknowledged that
> some degree of regular outdoor exercise is important to prisoners'
> psychological and physical well being. *See Bailey v. Shillinger,* 828 F.2d
> 651, 653 (10th Cir. 1987).  It has also determined that although denial of
> outdoor exercise is not a *per se* Eighth Amendment violation, continuous
> and prolonged denial of outdoor exercise can constitute an Eighth
> Amendment claim. *See Fogle v. Pierson,* 435 F.3d 1252, 1260 (10th Cir.
> 2006) (finding that an extended deprivation of outdoor exercise (three
> years) was a sufficiently serious deprivation)."  <u>Parker v. Zavaras</u>, 2011
> WL 1211487, at *12 (D. Colo. Mar. 31, 2011).  Particularly in view of the
> Tenth Circuit's reported ruling in <u>Fogle</u>, which was issued in 2006, this
> court finds that the defendants here are not entitled to qualified immunity
> on the plaintiff's Eighth Amendment claim concerning outdoor exercise.

(Docket No. 45 at 22-23; report and recommendation adopted in part and denied in part

by Judge Arguello on March 28, 2013 - Docket No. 50)

In the instant motion to dismiss, defendants noted a portion of the excerpt quoted

above but now argue that "the distinction here is that Plaintiff is seeking monetary

damages against Clements, who has only been in his position within the CDOC for a

limited period of time, much less than the three years at issue in *Fogle*, upon which the

Court relied on in denying the then named defendants, Zavaras and Jones, qualified

immunity in the motion to dismiss the original complaint.  Here, as noted above,

Clements has only been the Executive Director of the CDOC since approximately

January 2011.  The case law here is not clearly established that the amount of time that

these individuals were in their respective positions would be of a sufficient length to

substantiate a constitutional violation. . . . Assuming *arguendo* that Oakley

demonstrated that Clements violated his constitutional rights, Clements is nevertheless

entitled to qualified immunity because his actions did not violate clearly established law

associated with the amount of time he was the Executive Director. . . ." (Docket No. 113

at 14-15).

    As plaintiff correctly notes, however, as of January 2011 (when Clements

became Executive Director), plaintiff had already been denied any opportunity to

exercise or recreate outside for a cumulative period of approximately five years.  That

denial of outdoor exercise and recreation continued for another 19 or 20 months under

Clements' watch, until August or September 2012.  Defendant's obligation under the

Eighth Amendment here is not determined based upon the length of the **defendant's**

tenure in his official position; rather, it is based upon the length of time **plaintiff** has

been subjected to unconstitutional conditions of confinement.  This court agrees with

the plaintiff that defendants cannot  "restart the clock" for purposes of measuring

Clements' obligations under the Eighth Amendment by substituting their Executive

Director.  Clements' duties under the U.S. Constitution should be judged by the factual

circumstances he inherited as the new Executive Director of the CDOC; he had a duty

to apply clearly-established precedent to the factual situation at hand.  In sum, this court

finds that Clements is not entitled to qualified immunity at this time.

    **WHEREFORE,** for the foregoing reasons, it is hereby

    **RECOMMENDED** that the CDOC Defendants' Motion to Dismiss (Docket No.

22

113) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),
the parties have fourteen (14) days after service of this recommendation to serve
and file specific written objections to the above recommendation with the District
Judge assigned to the case.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy.  The District Judge need
not consider frivolous, conclusive, or general objections.  A party's failure to file
and serve such written, specific objections waives *de novo* review of the
recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53
(1985), and also waives appellate review of both factual and legal questions.
<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley
v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  July 18, 2013                           s/ Michael J. Watanabe
        Denver, Colorado                       Michael J. Watanabe
                                                United States Magistrate Judge